**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BRADLEY WAYNE DIXON,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **A-05-CA-672  LY** |
| | § | |
| **NATHANIEL QUARTERMAN, Director** | § | |
| **Texas Department of Criminal** | § | |
| **Justice, Institutional Division,** | § | |
| | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court are Petitioner's Petition for a Writ of Habeas Corpus By a Person in State Custody (Clerk's Dkt. #1), Brief in Support of Petitioner's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (Clerk's Dkt. #2), Respondent's Answer With Brief in Support (Clerk's Dkt. #14), Petitioner's Brief in Response to State's Answer Brief (Clerk's Dkt. #17) and Motion Supplementing Petitioner's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (Clerk's Dkt. #23). For the reasons set forth below, Petitioner's application for writ of habeas corpus should be denied.

## I.  PROCEDURAL HISTORY

On August 1, 2001, Petitioner Bradley Wayne Dixon ("Dixon") was convicted by a jury of two counts of aggravated sexual assault of a child, one count of sexual performance of a child, four counts of indecency with a child, and two counts of assault.  Punishment was assessed at seventy-five years incarceration on the aggravated sexual assault counts, ten years incarceration on the sexual performance of a child count, twenty years incarceration on three of the four indecency with a child counts, ten years incarceration on the fourth count, plus monetary fines for all counts.  Petitioner's convictions were affirmed on direct appeal.  *Dixon v. State*, No. 03-01-00459-CR, 2002 WL 31206210 (Tex. App.–Austin Oct. 3, 2002, pet ref'd).  Dixon also sought state post-conviction relief in an application for writ of habeas corpus.  The Texas Court of Criminal Appeals denied habeas relief without written order.  *Ex parte Dixon*, No. 60,908-01 (Tex. Crim. App. July 27, 2005).  Petitioner then filed this action in federal court.

## II.  ISSUES RAISED

Petitioner raises six issues in numerous grounds for relief.  Specifically, Dixon complains: (1) he received ineffective assistance of counsel; (2) his right to a fair and impartial trial was tainted by prosecutorial misconduct; (3) the trial judge failed to declare a mistrial; (4) he was deprived of his right to a public trial when the courtroom was cleared of spectators during the testimony of one witness; (5) the trial judge should have recused himself; and (6) he is actually innocent.

## III.  STANDARD OF REVIEW

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996.  *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT, Pub. L. 104-132, 110 Stat. 1214 (1996) ("AEDPA").  Under the AEDPA, a habeas petitioner may not obtain

2

relief with respect to any claim that was adjudicated on the merits in a state court proceeding unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000).  An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  A state court decision is entitled to deference unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2001).  A presumption of correctness attaches to factual determinations made by a state court.  28 U.S.C. § 2254(e)(1).  A habeas petitioner must rebut this presumption by clear and convincing evidence.  *Id.*; *Ladd v. Cockrell*, 311 F.3d 349, 352 (5th Cir. 2002).

## IV.  ANALYSIS

### A.  Ineffective Assistance of Counsel

Petitioner first contends he received ineffective assistance of counsel.  Specifically, he alleges his counsel: (1) failed to object to the validity of the search warrant; (2) did not object to the "tainted" testimony from certain witnesses; (3) failed to raise the defense afforded for provision of medical care to a child; (4) aided in the selection and introduction of prejudicial photographic

evidence; (5) did not call witnesses favorable to Dixon's defense;[1] and (6) committed a series of errors which cumulatively constituted ineffective assistance of counsel.[2]

### 1. Applicable Law

To establish an ineffective assistance of counsel claim, Dixon must meet the two-prong test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). He must demonstrate both that: (1) his counsel's performance was deficient, including "errors so serious that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment"; and (2) his counsel's "deficient performance prejudiced the defense." *Id*. at 687, 104 S. Ct. at 2064; *United States v. Walker*, 68 F.3d 931, 933 (5th Cir. 1995).

To establish deficient performance, Dixon must show his counsel's acts were not "reasonable in light of all the circumstances," and he must overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *See United States v. Haese*, 162 F.3d 359, 364 (5th Cir. 1998) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064); *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995) (strong showing required by defendant to place counsel's conduct outside wide range of reasonable professional assistance). To demonstrate prejudice, he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Haese*, 162 F.3d at

---

[1] Respondent argues Petitioner has not exhausted the fourth and fifth of his six claims of ineffective assistance of counsel because he did not properly raise them in his state habeas corpus application. The Court need not consider this argument because, as set forth below, Dixon is not entitled to relief on either claim. 28 U.S.C. § 2254(b)(2) (habeas corpus petition may be denied on the merits, notwithstanding failure of petitioner to exhaust state court remedies); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002) (federal court may deny habeas relief on merits even where claim is unexhausted and procedurally barred).

[2] Petitioner raised this claim for the first time in a supplement to his section 2254 petition.

364 (citing *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998)); *United States v. Kinsey*, 917 F.2d 181, 183 (5th Cir. 1990).

Dixon must show more than that a different result would have been "possible." *Cockrum v. Johnson*, 119 F.3d 297, 302 (5th Cir. 1997). He must also show the prejudice rendered the proceeding "fundamentally unfair or unreliable." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). When a defendant fails to meet either requirement of the *Strickland* test, his ineffective assistance of counsel claim is defeated. *See Belyeu v. Scott*, 67 F.3d 535, 538 (5th Cir. 1996); *United States v. Gaudet*, 81 F.3d 585, 592 (5th Cir. 1993). The Fifth Circuit "has also made clear that counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Likewise, counsel is not "deficient for failing to press a frivolous point." *Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995).

   2.   **Discussion**

Petitioner first asserts his counsel failed to object to the validity of the search warrant. Dixon styles his argument as based on counsel's failure to object that the warrant was an improper general warrant. However, in setting forth this claim, Petitioner does not attack the generality of the warrant. Rather, he maintains statements in the supporting affidavit were not confirmed by any trial testimony, the affidavit contained only conclusory statements without specific facts, the affidavit did not identify specific dates and no chain of custody was shown for items seized in a second search months after the issuance of the warrant.

According to the appellate court, "Dixon was a dormitory director at a San Marcos boarding school. Over the course of several months, he committed a number of sex and sex-related offenses

against the boys in his charge." *Dixon v. State*, 2002 WL 31206210 at *1.  The appellate court further stated:

> Appellant's computer was seized in January 2000 by police executing a warrant to search his residence at the boarding school.  A large quantity of child pornography was found stored in the computer.  Also seized during this search was a videotape showing one of the boys at the school masturbating.  In October 2000, employees of the school discovered over one hundred floppy disks in the ceiling of what had been appellant's residence.  These disks also contained child pornography.  During the punishment stage of appellant's trial, the videotape and a sampling of the pornographic images, movies, and obscene stories found stored in appellant's computer and on the floppy disks were introduced in evidence by the State.

*Id*. at *4.

As the appellate opinion makes clear, contrary to Dixon's argument, defense counsel did object to the validity of the warrant both at trial and on appeal.  In denying the challenge to the validity of the warrant the appellate court found the affidavit supporting the warrant was not conclusory, but rather set forth specific facts to establish probable cause to support the warrant.  *Id*. at *5-6.  Accordingly, it is clear Petitioner has not met his burden under *Stricklan*d to show either deficient performance on the part of his counsel or resulting prejudice.

Dixon next contends his attorney did not object to the "tainted" testimony from certain witnesses.  Specifically, he maintains the testimony of two alleged victims was tainted by repeated questioning of the two by various adults prior to trial in a leading and suggestive manner.  Petitioner argues the cumulative effect of the questioning was to "taint" or manipulate the witnesses' memory and thus their testimony.

The record shows Dixon's counsel filed a "Motion for Hearing Outside the Presence of the Jury to Test Reliability of Out of Court Statements of Child Witnesses."  In the motion, counsel argued:

It is the defense's contention that the alleged victims were repeatedly questioned by adult authority figures in a leading and suggestive manner. The cumulative effect of the repeated suggestive interviews was to taint the memory of the child [–] a phenomenon known as secondary gain. Secondary gain, in effect substitutes the knowledge implanted in the child's memory by the suggestive interviews for the memory of the actual event. The inconsistencies in the taped statements and other statements made by the children indicate a substantial likelihood that secondary gain has occurred. There further exists a substantial risk that the testimony of the listed children is now irreparably tainted, in that the facts that the children will relate in their testimony at trial will be the result of the suggestive interrogation rather than the child's accurate recollection of the events.

(Clerk's Rec. Vol. 1 at 45). Counsel also submitted a supporting memorandum including citation to appropriate legal authorities. (*Id*. at 48-50). Moreover, the very testimony cited by Petitioner in his habeas application makes clear counsel thoroughly questioned the victim concerning the questioning he underwent and the possible discrepancies in his statements. (Trial Rec. Vol. 3 at 164-70, 219). In addition, prior to the other victim testifying and the presentation of his prior videotaped statements, defense counsel specifically objected on the basis of taint due to repeated questioning. Before ruling on the objection, at the request of counsel, the trial judge viewed the videotaped questioning and statements. (*Id*. Vol. 5 at 3-13). Defense counsel also thoroughly cross-examined this victim concerning the prior questioning the witness underwent and prior statements he made. (*Id*. at 81-104, 109-13)

It is clear that, contrary to Dixon's argument, defense counsel did object to the admission of "tainted" testimony. He filed both a written motion prior to trial and again raised the issue immediately before the testimony of the two witnesses. Counsel further explored the issue of possible taint and inconsistent prior statements during cross-examination of the witnesses. Petitioner has failed to identify any additional steps counsel could have or should have taken and has thus not met his burden under *Strickland* as to this claim.

7

Petitioner next argues his counsel failed to raise the statutory defense afforded for provision of medical care to a child.  Under Texas law it is a defense to prosecution for sexual assault of a child "that the conduct consisted of medical care for the child and did not include any contact between the anus or sexual organ of the child and the mouth, anus, or sexual organ of the actor or a third party." TEX. PEN. CODE § 22.011(d) (Vernon Supp. 1999).  Dixon contends his attorney should have raised this medical care defense to the charged offenses involving two of the victims.

As to the first, Dixon was charged with causing the sexual organ of the victim to contact and penetrate the mouth of another child (Clerk's Rec. Vol. 1 at 2).  As stated in the statutory language quoted above, the medical care defense does not apply to offenses including contact between the sexual organ of a child and the mouth of a third party. TEX. PEN. CODE § 22.011(d).  Accordingly, counsel could not be ineffective for failing to raise the defense as to that charge.  *See Sones*, 61 F.3d at 415 (counsel's performance not deficient for failing to raise meritless point).

Dixon was also charged with engaging in sexual contact with another victim by touching the genitals of Shepler with his hand.  (Clerk's Rec. Vol. 1 at 3).  This count does not allege the offense of sexual assault under section 22.011, but rather the offense of indecency with a child.  *See* TEX. PEN. CODE § 21.11(a)(1) (person commits offense of indecency with child by engaging in sexual contact with child younger than seventeen years).  There is no medical care defense to the charge of indecency with a child.  Thus, again, counsel for Petitioner could not have been ineffective for failing to raise a legally unsupported argument.

As to the last victim, Dixon was charged solely with engaging in sexual contact with the victim by touching the genitals of the victim with his hand.  (Clerk's Rec. Vol. 1 at 4).  Again, because the medical care defense would not have applied to a charge of indecency with a child,

counsel was not deficient for failing to argue otherwise.  Moreover, the record reflects the charge involving this victim was not submitted to the jury.  (*Id*. Vol. 2 at 210-19).

Dixon also claims his attorney improperly aided in the selection and introduction of a sampling of images and files of a sexual nature seized pursuant to the search warrant discussed above.  He characterizes the evidence as extremely prejudicial and argues his counsel erred in allowing its admission.  Petitioner contends the error violated his right to be tried only for the offense with which he was charged, and not an extraneous offense such as possession of pornography.

The record shows, prior to the punishment phase of trial, the judge conducted a hearing concerning the evidence to be admitted during the punishment phase.  As noted above, defense counsel moved to suppress the evidence on the basis the search warrant was not valid.  (Trial Rec. Vol. 9 at 3-9).  Defense counsel further objected to the admission of any of the child pornography seized as highly prejudicial.  (*Id*. at 20-27, 31-42).  Apparently in anticipation of the trial court's ruling the evidence was admissible, counsel stipulated to a subset of images and files as a representative sampling of the pornographic images and files seized.  Notably, Dixon also signed the stipulation.  (*Id*. at 33-34, 40).  Although Petitioner maintains his counsel was deficient, he has failed to identify the further actions his attorney should have taken.  Nor has he shown, or even alleged, the stipulated sample was not representative but rather contained more prejudicial material.  Dixon has not, therefore, shown his counsel was ineffective on this basis.

Petitioner additionally asserts his counsel did not locate or call witnesses favorable to his defense.  He identifies eighteen potential witnesses he contends he asked his attorney to call in defense of the charges against him.  However, neither Dixon, nor any of the witnesses he has identified, provide any indication of the content of the testimony they would have provided.  This

type of unsubstantiated allegation does not merit habeas relief.  *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (court cannot even begin to analyze ineffective assistance of counsel claim without affirmative showing of missing evidence or testimony).  *See also United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (habeas petitioner must allege with specificity what investigation would have revealed and how it would have benefitted him).

Finally, Dixon argues the cumulative effect of the errors committed by his counsel was sufficient to constitute ineffective assistance of counsel.  Federal habeas relief is only available for cumulative errors that are of a constitutional dimension.  *Coble v. Dretke*, 444 F.3d 345, 355 (5th Cir. 2006); *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir.1997).  Petitioner here has failed to establish *any* error in the conduct of his counsel.  Therefore, relief is not available on this basis. *See Shields v. Dretke*, 122 Fed. Appx. 133, 154 (5th Cir. 2005) (claim that cumulative effect of trial counsel error was denial of effective assistance of counsel fails where petitioner has shown no such error); *United States v. Moye,* 951 F.2d 59, 63 n.7 (5th Cir. 1992) ("Because we find no merit to any of Moye's arguments of error, his claim of cumulative error must also fail").  Accordingly, the undersigned concludes Dixon is not entitled to relief on his claims of ineffective assistance of counsel.

## B.  Prosecutorial Misconduct

Dixon further asserts the prosecutor engaged in a pattern of misconduct with various witnesses.  He holds Assistant District Attorney Catherine Compton ("Compton") responsible for repeated questioning of the alleged victims and other witnesses prior to trial.  According to Petitioner, this questioning took the form of abusive interrogation, violating his rights to due process and equal protection.

In support of this claim Dixon cites the testimony of Matt Lupinacci ("Matt").  Matt testified he was interviewed by the police several times during the investigation of the underlying offenses as to his contact with Dixon.  He stated he honestly answered he had not been touched by Dixon or seen Dixon touch anyone.  Matt further testified he did not feel the police believed him.  (Trial Rec. Vol. 7 at 72).  In response to questioning by Compton Matt agreed no matter how many times he was asked, he would not have made an answer up.  (*Id*. at 74).  Matt's mother Leigh Ann Lupinacci testified, in her opinion, the people interviewing Matt wanted him to admit he was abused.  (*Id*. at 78).  Dixon additionally notes statements made by others prior to and during trial indicate possible victims and witnesses were questioned in group settings and were allowed to discuss the case and their testimony with each other.  (Trial Rec. Vol. 3 at 72; Vol. 7 at 67).

Petitioner further cites a letter he contends was sent by Compton to witnesses and their families prior to trial.  In the letter she stated:

> I know as the trial gets close many of you will have some serious fear and/or nervousness about testifying and/or having your children testify.  I would like all of you to know that most witnesses find that the experience is not nearly so bad as they expected it to be, some even feel much better after being able to get their story out and put the experience behind them.  While it is certainly understandable that you may not want to testify, it's important to remember that without you this man will possibly go free and continue perpetrating sex crimes on children.  He has a history which shows a predatory pattern of conduct over many years time, and I feel very strongly that he needs to receive a sentence that will prevent him from EVER doing this again.  This case **canno**t be successful without the testimony from the witnesses.

(*Ex parte Dixon*, No. 60,908-01 at 91-92) (emphasis in original).  Petitioner contends this letter was an improper injection of the prosecutor's opinion into the trial.

Dixon does not identify the precise legal basis for this claim.  It appears Petitioner may believe the pretrial actions of law enforcement officials and the prosecutor resulted in perjured

testimony at trial.  Due process is violated when the government knowingly elicits, or fails to correct, materially false statements from its witnesses.  *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989).  To merit relief on this basis, Dixon must show the statements at issue are actually false, the prosecution knew the statements were false, and the statements were material.  *Haese*, 162 F.3d at 365.

Petitioner has failed to meet his burden on this claim.  First, he does not identify the witnesses he believes presented perjured testimony.  Nor has Dixon presented any evidence establishing such testimony was perjured.  Absent such evidence, he is not entitled to habeas relief.  *See Beltran v. Cockrell*, 294 F.3d 730, 735 (5th Cir. 2002) (grant of habeas relief based on use of perjured testimony requires showing testimony was actually false).

Nor has Dixon shown the prosecutor's allegedly improper actions were a violation of his constitutional right to a fair trial.  Prosecutorial misconduct may constitute a denial of due process if the trial was rendered fundamentally unfair as a result.  *See Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986) (appropriate standard of review for claim of prosecutorial misconduct on writ of habeas corpus is narrow one of due process); *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (habeas court reviews claim of prosecutorial misconduct to determine whether trial was so infected with unfairness as to make resulting conviction a denial of due process).  A trial is fundamentally unfair if there is a reasonable probability the verdict might have been different had the trial been properly conducted.  *Styron v. Johnson*, 262 F.3d 438, 454 (5th Cir. 2001); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).  As noted above, Petitioner has not identified testimony or statements during trial which were affected by the conduct of the prosecutor or law enforcement officials.  Nor, consequently, has he shown how the trial was rendered unfair or the

verdict was adversely affected.  Accordingly, Petitioner has failed to show he is entitled to habeas relief on this basis.

## C.  Trial Judge Error

Petitioner next claims the trial judge should have declared a mistrial based on remarks made in the courtroom during trial.  He first points to a remark in the transcript, attributed to "A Juror," stating "I'm not going to continue on."  (Trial Tr. Vol. 5 at 108).  Dixon characterizes this remark as extremely prejudicial and inflaming to the sensibilities of the jury, and thus argues the trial judge should have declared a mistrial.

The undersigned finds this argument unavailing for two reasons.  First, a thorough review of the transcript reveals that, at the time the remark is recorded, the jury was not seated in the courtroom.  It appears likely, therefore, that the remark is nothing more than a typographical error by the court reporter.  Second, Petitioner has wholly failed to explain how this purported remark was in any way inflammatory to the jury.  *See Callins v. Collins*, 998 F.2d 269, 277 (5th Cir. 1993) (quoting *Murphy v. Florida*, 421 U.S. 794, 800, 95 S. Ct. 2031, 2036 (1975)) (to prevail on due process claim based on denial of fair trial owing to contamination of jury by exposure to prejudicial information petitioner must demonstrate prejudice, i.e., "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality").  The reference to an inability to continue is at best ambiguous because there is no indication as to the underlying reason for the inability to continue.  Dixon has thus not shown the trial judge erred in failing to declare a mistrial due to this purported remark.

The second instance cited by Dixon occurred during the punishment phase of trial.  Prior to the seating of the jury, the trial court considered defendant's motion in limine seeking to suppress

numerous pieces of evidence including the child pornography seized during execution of the search

warrant discussed above.  Defense counsel stated:

> Judge, if I may reply on that for the record under 403 I feel that basically the
> probative value does not substantially outweigh the prejudicial nature of this and
> what I feel the jury is going to do when they see this is hammer him on punishment,
> not for what they've heard on trial but for the inflammatory nature or what's depicted
> on the screen, on the images and I think it's improper to let it in.  I think that we
> could get Detective Graves or another law enforcement officer to say, "pursuant to
> a search warrant we did these searches.  We came up with this stuff.  It depicts
> children clearly under the age of eighteen having sex or giving oral sex.  We saw
> several computer video tapes what they call M pegs demonstrating children
> performing oral sex upon each other."  That way I don't think they become inflamed
> like they do with this.  That's the concern I have under 403.  The image is obviously
> so prejudicial one of the bailiffs here got sick and I think and I think that a lot of
> people can be affected by this to the point that they lose what you're here for which
> is punishment on evidence that was presented during the guilt innocence, not on the
> bad acts.

(Trial Rec. Vol. 9 at 38).

Although Dixon argues the reference by his counsel to the proposed evidence making one

of the bailiffs sick was so prejudicial as to merit declaration of a mistrial, he provides no legal

support for the notion that a description of the prejudicial nature of evidence to the trial judge outside

the presence of the jury must result in declaration of a mistrial.  Moreover, it is clear from the bulk

of Petitioner's argument that his true complaint is that the trial judge erred in allowing the admission

of evidence defense counsel characterized as deeply prejudicial.

A federal court may grant habeas relief only when "the violation of the state's evidentiary

rules results in a denial of fundamental fairness."  *Herrera v. Collins,* 904 F.2d 944, 949 (5th Cir.

1990).  *See also Givens v. Cockrell*, 265 F.3d 306, 308 (5th Cir. 2001) (state court's erroneous

admission of prejudicial evidence justifies habeas relief only when evidence is crucial, critical, and

highly significant); *Hafdahl v. Johnson*, 251 F.3d 528, 536 (5th Cir. 2001) (habeas relief based on

14

wrongful admission of extraneous offense evidence merited only if error is of such magnitude it resulted in "fundamental unfairness").

The very remarks Petitioner complains of occurred during the hearing the trial judge held on the admissibility of the testimony prior to the punishment phase of trial.  Both defense counsel and the prosecutor presented argument concerning admission of the allegedly prejudicial evidence. (Trial Rec. Vol. 9 at 22-39).   The trial judge considered the argument and ruled the evidence was admissible.  In so doing, the judge found the testimony was relevant and that the probative value outweighed the prejudicial effect.  (*Id.* at 38-39).  In addition, the judge admonished the spectators present in the courtroom to refrain from any reaction to any evidence of an explicit nature. (*Id.* at 42).

Dixon has failed to show he is entitled to relief on this claim.  First, Petitioner has not shown either that the trial judge failed to use the correct legal standard in considering the admission of the extrinsic video and photographic evidence seized from his residence or that the judge's conclusion was incorrect.  *See Lomas v. State,* 707 S.W.2d 566, 568-69 (Tex. Crim. App. 1986) (evidence of "extraneous" or "extrinsic" offense may be admissible to show context in which criminal act occurred and jury may consider those facts and circumstances in determining severity of punishment).  *See also* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a) (Vernon Supp. 2000) (evidence of defendant's character relevant and admissible during punishment phase of non-capital trial).  Nor has Dixon established fundamental unfairness as to the admission of the extrinsic evidence.  Accordingly, Petitioner should not be granted relief on this claim.

**D.  Denial of Public Proceedings**

Petitioner next asserts he was denied his right to a public trial when the courtroom was cleared of spectators during the testimony of one of the victims.  The Constitution guarantees a

15

criminal defendant the right to a public trial.  Before a trial proceeding may be closed to the public:

(1) the party seeking to close the hearing must advance an overriding interest that is likely to be

prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial

court must consider reasonable alternatives to closing the proceeding; and (4) the trial court must

make findings adequate to support the closure.  *Waller v. Georgia*, 467 U.S. 39, 48, 104 S. Ct. 2210,

2216 (1984); *United States v. Osborne*, 68 F.3d 94, 98 (5th Cir. 1995).

Prior to this witness' testimony, the prosecutor moved to exclude the public from the

courtroom.  In support of the motion, the prosecutor cited the witness' age and his reluctance to

testify about sensitive matters in public.  (Trial Rec. Vol. 5 at 13-15).  The prosecutor questioned the

victim, who testified he was currently fourteen, was twelve at the time of the events in question, and

did not want to testify if anyone other than the parties was present in the courtroom due to

embarrassment and his fear of having his name in the paper.  The victim further testified he believed

the presence of other people would affect his ability to testify truthfully and fully because he did not

believe the matters were anybody else's business.  (*Id*. at 15-16).  Defense counsel objected to the

motion as insufficiently supported.  He also questioned the victim concerning his reluctance to

publicly testify.   (*Id*. at 18-22).  The trial judge granted the prosecutor's motion, based on the

victim's testimony.  (*Id*. at 17, 22).

In rejecting this claim, the state habeas court implicitly found the trial court met the requisite

strictures placed on closing a trial proceeding.  This Court must defer to that finding absent clearly

established federal precedent holding otherwise.  Petitioner here has failed to carry that burden.

Indeed, in a case involving transportation of a 14-year-old child across state lines for purpose of

sexually abusing him, the Fifth Circuit concluded the trial court's entry of an order including a

finding that "the victim 'A.' is a minor and that closure would protect his interests and well-being" was sufficient to meet the closure requirements set forth in Supreme Court precedent on courtroom closure. *United States v. Hitt*, 473 F.3d 146, 154 (5th Cir. 2006). Accordingly, Dixon has not shown he is entitled to federal habeas relief on this basis.

**E. Trial Judge Recusal**

Dixon further contends the judge who presided over his case was not legally qualified to do so and should have recused himself. Specifically, Petitioner complains the presiding judge, Michael McCormick, was a visiting judge who had not taken an anti-bribery oath within two years of his trial as required by the Texas Constitution.[3]

This claim fails for two reasons. First, petitioner's claim arises solely under state law and is, thus, not cognizable on federal habeas review. *See Ramos v. Dretke*, 2005 WL 39144 at *3 (N.D. Tex. Jan. 6, 2005), rec. adopted, 2005 WL 233952 (N.D. Tex. Jan. 31, 2005) (alleged failure of trial judge to take oath of office required by Texas Constitution and state law did not merit federal habeas relief). Indeed, even under state law, procedural irregularities in the referral of a matter to another judge do not render a judgment void. *Davis v. State*, 956 S.W.2d 555, 560 (Tex. Crim. App. 1997).

Second, Petitioner has submitted no evidence establishing Judge McCormick failed to take the requisite oath or present the required authorization. In support of this claim Dixon attaches a letter from the Texas Secretary of State indicating only two oaths of office executed by Judge McCormick were on file. The first filing was noted as made in Judge McCormick's capacity as a Senior Judge dated January 16, 2001. The second was made in Judge McCormick's capacity as

---

[3]The Texas Constitution requires all elected and appointed officers, before they enter upon the duties of their office, to take an oath disclaiming any bribery to obtain the office. TEX. CONST. art. 16, § 1(a) & (b).

Presiding Judge for the Court of Criminal Appeals dated January 9, 1995. *Ex parte Dixon*, No. 60,908-01 at 94. However, "a lack of filing of any required oath is not proof, in itself, of the failure of the judge to take the constitutionally required oaths." *Murphy v. State*, 95 S.W.3d 317, 320 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd). *See also Thomas v. Burkhalter*, 90 S.W.3d 425, 427 (Tex. App.–Amarillo 2002, pet. denied) (absence of oaths on file does not establish oaths were not taken). Texas courts have also declined to find the failure to file an oath that has been taken deprives an official of his authority. *Espinosa v. State*, 115 S.W.3d 64, 66 (Tex. App.–San Antonio 2003, no pet.); *Thomas,* 90 S.W.3d at 427. Dixon has failed to show he is entitled to relief on this basis.

## G.  Actual Innocence

Petitioner finally maintains he is actually innocent. A claim of actual innocence, standing alone, is insufficient to merit federal habeas relief. *Herrera v. Collins,* 506 U.S. 390, 400, (1993); *Dowthitt v. Johnson,* 230 F.3d 733, 741 (5th Cir. 2000). *See also Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006) (concluding recent Supreme Court authority did not change law to recognize validity of stand-alone actual-innocence claims). There also must be evidence of an independent constitutional violation in the state criminal proceeding. *Dowthitt,* 230 F.3d at 741. Here, Petitioner has failed to establish an underlying constitutional violation. There is not any affirmative evidence of his innocence. Dixon's assertion that the conflicting testimony of two victims, taken in conjunction with other allegedly contradictory evidence, indicates his innocence is insufficient. Accordingly, Petitioner has not shown he is entitled to relief on this ground.

## V.  RECOMMENDATION

The Magistrate Court recommends that the District Court **DENY** Petitioner's Application for Habeas Corpus under 28 U.S.C. § 2254.

18

## VI.  WARNING

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 29th day of June, 2007.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE